## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ODP CORPORATION,<br>on behalf of the Cuban Electric Company,<br>　　6600 N Military Trail<br>　　Boca Raton, FL, 33496,<br><br>　　　　　　　　*Plaintiff*,<br><br>　　　v.<br><br>SCOTT BESSENT, in his official capacity as<br>Secretary of the Department of the Treasury,<br>　　1500 Pennsylvania Avenue, NW,<br>　　Washington, D.C. 20220,<br><br>LISA M. PALLUCONI, in her official capacity as<br>Acting Director of the Office of Foreign Assets<br>Control,<br>　　United States Department of the Treasury,<br>　　1500 Pennsylvania Avenue, NW,<br>　　Washington, D.C. 20220,<br><br>UNITED STATES DEPARTMENT OF THE<br>TREASURY,<br>　　1500 Pennsylvania Avenue, NW,<br>　　Washington, D.C. 20220,<br><br>and<br><br>OFFICE OF FOREIGN ASSETS CONTROL,<br>　　United States Department of the Treasury,<br>　　1500 Pennsylvania Avenue, NW,<br>　　Washington, D.C. 20220,<br><br>　　　　　　　　*Defendants*. | Civil Action No. 25-cv-2234 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Plaintiff ODP Corporation, on behalf of its subsidiary, Cuban Electric Company ("CEC"), brings this action to compel the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") to issue a long-overdue decision on CEC's petition to unblock certain assets that have been frozen in an account at Citibank for over 60 years. CEC's petition has been pending at OFAC for over four years.

Despite the name, CEC is and always has been a Florida corporation. For nearly four decades, it provided electricity in Cuba. But that all changed in 1960. The Revolutionary Cuban Government seized the majority of CEC's assets, forcing the company to end its operations. It sold off the assets that were out of the Cuban Government's reach and deposited the proceeds into a Citibank trust account in 1965. The proceeds have sat in that account, untouched, ever since.

Despite recognizing that CEC is a U.S. national, OFAC has blocked transfers of CEC stock and frozen CEC's assets since July 8, 1963, leaving CEC paralyzed for the better part of a century.

In October 2020, confronting financial difficulties caused by the COVID-19 outbreak, ODP Corporation asked OFAC to unblock the CEC assets in Citibank to allow ODP to raise needed cash for its operations. Yet OFAC has dragged its feet for nearly four-and-a-half years. It has met CEC's repeated requests for updates—in at least 14 emails and telephone calls—with empty assurances that it is "working on it," when it has responded at all. To this day, 60 years after they were deposited in Citibank, CEC's assets remain frozen and its shares remain blocked, without explanation.

CEC has waited long enough. CEC is owed an explanation, and the law requires one. CEC seeks this Court's intervention to direct OFAC to make a decision.

1

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under federal law, including the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*., and pursuant to 28 U.S.C. § 1361, because this action seeks to compel officers and employees of the United States and its agencies to perform a duty owed to CEC.  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other appropriate relief pursuant to 28 U.S.C. §§ 2201–02 and 5 U.S.C. §§ 705–06, and mandamus relief pursuant to 28 U.S.C. § 1361.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies and officials acting in their official capacities; at least one defendant is located in this district; and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

3.     Plaintiff ODP Corporation is the successor public company by holding company reorganization to Office Depot, Inc., and it brings this suit on behalf of its majority-owned non-operating subsidiary, CEC.  CEC is a United States company incorporated and headquartered in the State of Florida, and it is in good standing under the laws of Florida.

4.     Defendant United States Department of the Treasury is an executive department of the United States government that is the national treasury and is responsible for the United States' finances.  The Department of the Treasury is headquartered in Washington, D.C.

5.     Defendant Office of Foreign Assets Control is a financial intelligence and enforcement agency within the Department of the Treasury that administers and enforces

economic and trade sanctions in support of U.S. national security and foreign policy objectives, including the sanctions on Cuba relevant to this case.  OFAC is headquartered in Washington, D.C.

6.      Defendant Scott Bessent is the Secretary of the Department of the Treasury.  He is being sued in his official capacity only.  Secretary Bessent maintains an office at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220.

7.      Defendant Lisa M. Palluconi is the Acting Director of OFAC.  She is being sued in her official capacity only.  Director Palluconi maintains an office at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220.

## FACTUAL ALLEGATIONS

### *The Revolutionary Cuban Government Confiscates CEC's Assets*

8.      CEC is an American company that was incorporated in the State of Florida almost one century ago, on December 13, 1927.  The company has remained in good standing under the laws of Florida ever since.

9.      CEC was one of the many victims of the Cuban Revolution.  From the time of its founding until August 6, 1960, CEC operated the largest electric and manufactured gas systems in Cuba.  But on that date, the Revolutionary Cuban Government expropriated nearly all of its properties in Cuba without any compensation.

10.     CEC was left with only whatever limited cash and assets it had in U.S. banks and other locations outside of the Cuban Government's control.  Since the Cuban Government's expropriation had eviscerated CEC's ability to continue its operations, CEC made the difficult decision to cease operations and liquidate most of its remaining assets.

11.     As relevant here, CEC sold three properties and deposited the resulting proceeds into a single account at the National City Bank of New York, which soon became Citibank:

a.  On October 27, 1961, CEC deposited the proceeds of the sale to the U.S. Navy of two mobile diesel generating units located at the U.S. Guantanamo Bay Naval Base;

b.  On March 23, 1963, CEC deposited the proceeds of a sale to the U.S. Navy of an electric power distribution system constructed by CEC at the U.S. Guantanamo Bay Naval Base; and

c.  On October 1, 1970, CEC deposited the proceeds of a sale of diesel generation units to CPFL Energia (formerly Forca e Luz de Minas Gerais), a non-state-owned electric energy and distribution company in Brazil.

12.  Citibank continues to hold these funds to this day, and with interest the total amount in the account has grown to $14,715,778.38.

13.  Like other U.S. citizens victimized by the Cuban Revolution, CEC sought to certify its claims to confiscated property through the Foreign Claims Settlement Commission, an entity created by Congress to certify "the amount and validity of claims by nationals of the United States against the Government of Cuba." 22 U.S.C. § 1643b(a).

14.  On August 19, 1970, the Commission certified that CEC had sustained a loss at the hands of the Revolutionary Cuban Government of $267,568,413.62, with interest running at 6% annual from August 6, 1960, to the present date. To date, it remains the largest claim that the Commission has ever certified against Cuba.

### OFAC Blocks CEC's Assets Without Explanation

15.  Control of CEC changed hands a number of times over subsequent decades, and a small percentage of its stock was freely traded. In 2006, however, CEC learned that certain transfers of publicly traded CEC stock were not being cleared.

4

16.     CEC's stock should have continued to be freely traded consistent with U.S. sanctions laws, including the Cuban Assets Control Regulations, which implement U.S. sanctions restrictions on "Cuba and any national thereof." 15 C.F.R. 515.305.  Specifically, Section 515.201 of the Regulations, which covers "[t]ransactions involving designated foreign countries or their nationals," generally prohibits "[a]ll dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property . . . by any person subject to the jurisdiction of the United States," if "such transactions involve property in which [Cuba], or any national thereof, has at any time on or since the effective date of this section had any interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 515.201(b).  Section 515.202 of the Regulations, which covers "[t]ransactions with respect to securities registered or inscribed in the name of a designated national," likewise prohibits transactions relating to "any security . . . registered or inscribed in the name of any [Cuban] national."  Both sections are thus directed against property (including stock) in which Cuba or a Cuban national has a direct or indirect interest.

17.     CEC, however, was (and remains) a U.S. national, not a Cuban national. It thus followed that these provisions should not apply to CEC, nor to any transfer of CEC stock (or other assets) unless there happened to be specific Cuban involvement in that transfer (for instance, if someone was attempting to transfer CEC stock from a Cuban shareholder).

18.     On June 12, 2006, CEC accordingly applied to OFAC for recognition that CEC is a U.S. national and that transfers of CEC stock should be restricted under the Regulations only when Cuba or a Cuban national was involved.  *See* Ex. 1.

19.     CEC made clear in that application that CEC is and has always been a U.S. company.  Like many other American companies prior to 1960, CEC explained, CEC had assets

and operations in Cuba, but the company is and was an American company almost entirely owned by Americans.

20.     On May 23, 2008, however, then-Director of OFAC Adam Szubin replied to CEC's 2006 application on behalf of OFAC, acknowledging that "CEC is not a national of Cuba as defined by the Regulations[,]" but finding without explanation that "Cuba has an interest in CEC's shares."  Ex. 2, at 1–2.

21.     On July 29, 2008, on behalf of OFAC, then-Director Szubin issued a public notice asserting that OFAC considers a Commission-certified claim against Cuba "as property in which Cuba has an interest" under the Cuban Assets Control Regulations.  Ex. 3.  As a result, "the transfer of a certified Cuban claim is generally prohibited absent authorization by OFAC."  *Id.*  However, neither the funds held by Citibank on CEC's behalf nor CEC's shares are part of CEC's certified claim against Cuba.

22.     Even as OFAC found that *all* shares of CEC (not just those held by Cubans) should be "blocked," OFAC also provided CEC with a specific license authorizing the transfer of CEC shares among persons subject to U.S. jurisdiction.  Ex. 2, at 3–4.  OFAC has continued to renew variations of this license, including as recently as June 17, 2024, when it extended the license's validity to June 30, 2026.

23.     Since OFAC had provided a license alongside its determination that Cuba somehow had an interest in *all* CEC shares, CEC did not challenge this determination from 2006 to 2020.

24.     On October 26, 2020, however, CEC filed a request for reconsideration under 31 C.F.R. § 501.806 and § 515.801 and asked OFAC to unblock (1) the shares of CEC that are currently held by ODP and other U.S. persons (that is, not by Cubans), as well as (2) CEC's trust

account held by Citibank.  *See* Ex. 4.  Section 501.806 provides that "[f]ollowing review of all applicable submissions, OFAC will determine whether the property should be released."

25.     CEC explained in its request (filed at the height of the COVID-19 pandemic) that unblocking those two assets "would be of great assistance to the American shareholders of CEC during unprecedented economic times—where access to cash and the free flow of capital is essential."  *Id.* at 2.  By the same token, CEC explained, "granting this unblocking request would have no impact whatsoever on either the Cuban government's, or any Cuban national's, assets, rights, interests, or holdings with respect to CEC or any other property.  Neither the Cuban government, nor any Cuban national that ever had an interest in CEC, will be affected by granting of this request."  *Id.*

26.     Granting CEC's emergency request for reconsideration should have been a quick and easy decision for OFAC.  CEC was no differently situated than *any* American company that happened to have a small minority of shares owned by Cubans.  OFAC regularly decides cases under the Cuban Asset Control Regulations, and OFAC could have likewise decided CEC's request in a matter of days.

### *OFAC Indefinitely Delays Acting on CEC's Unblocking Request*

27.     OFAC has failed to act on CEC's request for over four years.  CEC has regularly inquired with OFAC—in at least 14 emails and phone calls—as to the status of its request and whether CEC could provide any additional information.  OFAC has either ignored CEC's requests or given noncommittal responses and refused to commit to any timeline for resolving CEC's straightforward request.  OFAC has similarly refused to provide any reasons for the delay or to respond to CEC's repeated requests for a meeting to discuss the matter.

28.    OFAC initially appeared to be taking CEC's request seriously.  On January 26, 2021, an OFAC officer reached out for clarification and supporting documentation on a few minor points in CEC's application.  On February 5, 2021, CEC's counsel responded with information, and on February 8, 2021, CEC provided the requested documentation.  On February 11, 2021, the OFAC officer acknowledged receipt and promised to "be in touch should we require additional information."  One month later, the officer confirmed in response to outreach from CEC that while he had "[n]o update at this time," he could "confirm[] that the application is still under review."

29.    CEC subsequently e-mailed the same officer for a status update *five times* between March 2021 and December 2022.  CEC offered for officials of its majority owner, ODP Corporation, to travel from Florida to meet with OFAC and other government officials to answer any questions they might have.  CEC repeatedly asked when it could expect a decision.  CEC noted that "[t]hese issues have remained unresolved for many years."  CEC received no response—at all—to any of these e-mails.

30.    After more than two years of total silence in response to repeated inquiries, on January 3, 2023, CEC's counsel finally contacted the Deputy Director of OFAC, who responded promptly that OFAC staff would contact CEC's counsel.  After hearing nothing for another three weeks, CEC's counsel contacted the Deputy Director again and finally received a response from a member of OFAC's licensing staff on January 24, 2023.  On January 30, 2023, another OFAC licensing officer informed CEC's counsel by email that she was "actively reviewing" CEC's application and would "definitely reach out if we need more information as we process it."  But OFAC still did not resolve CEC's application.  After another five months had gone by, CEC's counsel accordingly warned OFAC on July 10, 2023 that "[i]n light of the multiple years of efforts

8

expended by CEC and its affiliates in connection with [the application], CEC may seek judicial relief to recover the proceeds in the Citibank trust account if necessary."

31.     CEC continued to press the matter at regular intervals, including by requesting opportunities to discuss the matter with OFAC officials.  CEC's counsel contacted OFAC staff by email to request a decision on at least six more occasions on October 31, 2023; May 20, 2024; November 12, 2024; November 18, 2024; December 31, 2024; and January 10, 2025.  But while OFAC at least began acknowledging CEC's e-mails as well as assuring CEC it was "working on the case," OFAC still did not resolve CEC's application and still refused to explain, despite repeated requests, why CEC's shares and its funds held by Citibank had been blocked.  OFAC staff also continued to refuse to respond to CEC's request for a meeting to resolve the matter.

32.     CEC continued to press the matter at regular intervals, including by requesting opportunities to discuss the matter with OFAC officials.  "At this point, I think the Government owes us some explanation about the issues the Government is trying to address, so that we can respond to any questions. . . . After 60 years, the U.S. Government owes Cuban Electric Company a determination and a chance to be heard and to appeal," CEC's counsel urged on November 18, 2024.  "The current situation is simply not fair or good government."  CEC's parent company itself advised that it needed access to the funds in its Citibank account "to grow the business in 2025" because it was "currently facing serious challenges due to the national decline in the retail industry and competition in the ecommerce space," as counsel similarly explained by email on December 31, 2024.

33.     Still, OFAC did nothing, and it has continued to do nothing until the present day.

34.     Over the course of the many years in which CEC's request has languished in OFAC's files, it has become increasingly clear that OFAC is not using any system or rule of reason

to decide whose requests get adjudicated when.  Indeed, the multiple-year delay in this case is unusual not only with respect to the simplicity of the substance of the request itself, but also compared to other applicants who have made similar requests.

35.    Given the simplicity of CEC's application, adjudicating CEC's request would have little or no effect on any competing agency priorities.

36.    Given the length of time in which CEC's application has languished, as well as the long periods of silence with no response to even requests for status updates, OFAC has, upon information and belief, either mishandled or lost CEC's application.

37.    OFAC has a non-discretionary duty to adjudicate applications like CEC's.

38.    OFAC's failure to act in a reasonable time on CEC's application has resulted in significant hardship to CEC and its shareholders.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Administrative Procedure Act—Agency Action Unlawfully Withheld or Unreasonably Delayed**

39.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

40.    The Administrative Procedure Act provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof."  5 U.S.C. § 702.  The Act defines "agency action" as including a "failure to act."  *Id.* § 551(13).

41.    Consistent with that mandate, the Administrative Procedure Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).

10

42.    The Administrative Procedure Act further requires that agencies act "within a reasonable time," *id.* § 555(b), and that agencies give prompt notice "of the denial in whole or in part of a written application, petition, or other request" made by an interested person in an agency proceeding, *id.* § 555(e).

43.    OFAC has failed to act on CEC's application for nearly four and a half years despite it being required to do so.  *See* 31 C.F.R. §§ 501.806, 515.801.  OFAC's failure to act is an agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

44.    This Court should accordingly compel OFAC to act on CEC's application under 5 U.S.C. § 706(1).

45.    This Court should also declare under 28 U.S.C. § 2201 that OFAC's failure to act on CEC's application is unlawful.

### SECOND CLAIM FOR RELIEF

**Violation of the Administrative Procedure Act—
Arbitrary and Capricious (Constructive Denial)**

46.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

47.    Courts must "hold unlawful and set aside any agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

48.    OFAC's continued inaction on CEC's application constitutes a constructive denial of that application.

49.    OFAC's constructive denial of CEC's application is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because OFAC does not have a

reasonable basis and has expressed no reasonable basis under the Cuban Asset Control Regulations for denying CEC's application.

50.      Defendants' constructive denial is contrary to law, and the Court must hold it unlawful and set it aside.

### *THIRD CLAIM FOR RELIEF*

**Violation of the Administrative Procedure Act—Arbitrary and Capricious (Continued Block)**

51.      Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

52.      Courts must "hold unlawful and set aside any agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

53.      Defendants' continued block on CEC's shares and the funds in CEC's Citibank account is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because OFAC does not have a reasonable basis under the Cuban Asset Control Regulations for continuing to block all of CEC's shares or its access to the funds in its Citibank account.

54.      Defendants' continued block on CEC's shares and its funds in its Citibank account is contrary to law, and the Court must hold it unlawful and set it aside.

### *FOURTH CLAIM FOR RELIEF*

**Mandamus**

55.      Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

56.      By failing to act on CEC's request for reconsideration for four and a half years, Defendants have disregarded their clear, non-discretionary duty to make a determination as to

12

whether CEC's shares and the funds in its Citibank account should be released.  *See* 31 C.F.R. §§ 501.806, 515.801.

57.    Mandamus is warranted "to correct transparent violations of a clear duty to act" by federal officials.  *In re Aiken Cnty.*, 725 F.3d 255, 258 (D.C. Cir. 2013).

### FIFTH CLAIM FOR RELIEF

### Ultra Vires

58.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs.

59.    No statute, constitutional provision, or other source of law authorizes Defendants to refuse to act on CEC's application and to continue to block CEC's shares and its funds in its Citibank account.  Defendants' actions doing so exceed their lawful authority.

60.    Plaintiff has a non-statutory right of action to declare unlawful and enjoin Defendants' ultra vires actions.

### PRAYER FOR RELIEF

**NOW, THEREFORE,** Plaintiffs request judgment in their favor against Defendants as follows:

1.    Declare that OFAC has violated its obligation to resolve CEC's application;

2.    Order OFAC to issue a written, reasoned decision within 30 days resolving CEC's application;

3.    Award Plaintiff reasonable attorney's fees and costs; and

4.    Grant such other and further relief as the Court may deem appropriate.

Dated: July 14, 2025                    Respectfully submitted,

                                        /s/ John B. Bellinger
                                        John B. Bellinger, III (DC Bar 405059)
                                        John P. Elwood (DC Bar 452726)
                                        Sally Pei (DC Bar 1030194)
                                        John V. Hoover (DC Bar 90006181)
                                        ARNOLD & PORTER
                                            KAYE SCHOLER LLP
                                        601 Massachusetts Ave., NW
                                        Washington, DC 20001-3743
                                        Tel: (202) 942-5000
                                        john.bellinger@arnoldporter.com

                                        Counsel for Plaintiff ODP Corporation

14